## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| DANIEL BOYD, *on behalf of himself and others similarly situated*, | Civil Action No.: |
| Plaintiff, | Jury Trial Demanded |
| v. | Proposed Class Action |
| JOHN C. HEATH, ATTORNEY AT LAW, PLLC d/b/a LEXINGTON LAW FIRM, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

### Nature of this Action

1. Daniel Boyd ("Plaintiff") brings this class action against John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm ("Defendant"), under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system, or an artificial or prerecorded voice, to place non-emergency calls or deliver text messages to telephone numbers assigned to a cellular telephone service without prior express consent.

3. Upon information and good faith belief, Defendant also routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system, or an artificial or prerecorded voice, to place non-emergency calls or deliver text messages to telephone numbers assigned to a cellular telephone service without prior express consent, in that it continues to place calls or deliver text messages to cellular telephone numbers after the regular and customary users of those cellular telephone numbers instruct Defendant to stop placing calls to those cellular telephone numbers.

1

4. Upon information and good faith belief, Defendant also routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an automatic telephone dialing system, or an artificial or prerecorded voice, to place advertising or telemarketing calls or deliver advertising or telemarketing text messages to telephone numbers assigned to a cellular telephone service without prior express written consent.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

6. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as Defendant is based in this district and as a substantial portion of the events giving rise to this action occurred in this district.

## Parties

7. Plaintiff is a natural person who at all relevant times resided in Pittsburgh, Pennsylvania.

8. Defendant is a law firm that sells credit repair and monitoring services to consumers across the country.

9. Defendant is headquartered in Salt Lake City, Utah.

## Factual Allegations

10. For the entire relevant period, Plaintiff has been the regular and sole user of his cellular telephone number—(412) XXX-3478.

11. Sometime in 2015, Defendant began delivering text messages to Plaintiff's cellular telephone number from short code 482-80.[1]

---

[1] "A short code is a number with fewer digits than a phone number to which a text message can be sent. The five-or six-digit numbers are often promoted in traditional and digital advertising.

12.     In these text messages, Defendant marketed and advertised its credit repair and credit monitoring services to Plaintiff.

13.     After receiving multiple text messages from Defendant, Plaintiff responded "STOP," and Defendant acknowledged Plaintiff's request and—temporarily—stopped delivering text messages to his cellular telephone number.

14.     However, starting in February 2018, Defendant again began delivering text messages to Plaintiff's cellular telephone number from short code 482-80, again to market and advertise its credit repair and credit monitoring services to Plaintiff:



Companies use these codes to bring customers into the branded experience through voting, surveys, sweepstakes, coupon offers, information updates, loyalty programs and alerts." https://usshortcodes.com/faqs (last visited August 18, 2020).

The 482-80 short code is registered to "LexLaw Case Alerts." *See* https://usshortcodedirectory.com/search/?shortcode-number=48280 (last visited August 18, 2020).

15. Once more, Plaintiff replied "STOP," and Defendant acknowledged Plaintiff's request and—temporarily—stopped delivering text messages to his cellular telephone number.

16. Plaintiff did not "submit" any "form," as mentioned in Defendant's text message.

17. In fact, Plaintiff did not communicate with Defendant between Plaintiff's 2015 instruction to "STOP," and 2018.

18. Plaintiff did not give Defendant prior express consent to deliver text messages to his cellular telephone number by using an automatic telephone dialing system at any point between Plaintiff's 2015 instruction to "STOP," and 2018.

19. Plaintiff did not give Defendant prior express written consent to deliver advertising or telemarketing text messages to his cellular telephone number by using an automatic telephone dialing system at any point between Plaintiff's 2015 instruction to "STOP," and 2018.

20. Starting in early 2020, Defendant again began delivering text messages to Plaintiff's cellular telephone number marketing and advertising its credit repair and credit monitoring services to Plaintiff.

21. At the same time, Defendant began placing telephone calls to Plaintiff's cellular telephone number marketing and advertising its credit repair and credit monitoring services to Plaintiff.

22. Plaintiff answered several of the calls Defendant placed to his cellular telephone number.

23. On the occasions that Plaintiff answered Defendant's calls, he was greeted with an artificial or prerecorded voice message that did not allow him to connect to a live person, but rather offered an IVR menu to speak to a representative, receive another call back later, or opt out of receiving any additional calls.

24. Plaintiff selected the "opt out" IVR response on more than one occasion when responding to Defendant's telephone calls.

25. However, despite Plaintiff's repeated instructions to stop calling or delivering text messages, Defendant placed between 25 and 30 telephone calls and text messages to Plaintiff's cellular telephone number, including on March 11, 13, 16, 17, 19, 2020, and April 6, 2020.

26. Also during this period, Defendant left at least 5 artificial or prerecorded voice messages on Plaintiff's cellular telephone voicemail.

27. One of the artificial or prerecorded voice messages that Defendant left on Plaintiff's cellular telephone voicemail states: ". . . I'd like to offer you a free credit report consultation, where we can evaluate your credit and develop a game plan for you. Sound good? Press 1 to get our help now. Press 2 if you want me to call you back later. Press 9 if you aren't interested, and you can opt out. Hello, I am calling on behalf of Lexington Law. We are a consumer advocacy law firm that is sensitive to what it takes to what it takes to get your credit back on track." <u>Click here for Link to Recording.</u>

28. Plaintiff did not request a credit report consultation, and did not—and does not—have any business relationship with Defendant.

29. Plaintiff did not communicate with Defendant between Plaintiff's 2018 instruction to "STOP," and 2020.

30. Plaintiff did not give Defendant prior express consent to place calls or deliver text messages to his cellular telephone number by using an automatic telephone dialing system, or an artificial or prerecorded voice, at any point between Plaintiff's 2018 instruction to "STOP," and 2020.

31. Plaintiff did not give Defendant prior express written consent to place advertising or telemarketing calls or deliver advertising or telemarketing text messages to his cellular telephone number by using an automatic telephone dialing system, or an artificial or prerecorded voice, at any point between Plaintiff's 2018 instruction to "STOP," and 2020.

32. Plaintiff did not provide his cellular telephone number to Defendant.

33. Considering this, and in light of the nature and character of the calls and text messages at issue, including Defendant's use of an artificial or prerecorded voice, Defendant placed its calls and delivered its text messages to Plaintiff's cellular telephone number by using an automatic telephone dialing system.

34. Similarly, and also in light of the nature and character of the calls at issue, including Defendant's use of an artificial or prerecorded voice, Defendant placed its calls to Plaintiff's cellular telephone number by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *see also Allan v. Pennsylvania Higher Educ. Assistance Agency*, No. 19-2043, 2020 WL 4345341 (6th Cir. July 29, 2020); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020).

35. And even if Defendant believes it had prior express consent to place calls or deliver text messages to Plaintiff's cellular telephone number by using an automatic telephone dialing system, or an artificial or prerecorded voice, Plaintiff repeatedly revoked consent to receive those calls or text messages.

36. When Plaintiff revoked consent to receive calls or text messages at his cellular telephone number, he did not limit his revocation of consent in any way, and intended for it to apply to any communications from Defendant.

37. Furthermore, Defendant placed its calls and delivered its text messages to Plaintiff's cellular telephone number for non-emergency purposes.

38. Upon information and good faith belief, Defendant placed its placed its calls and delivered its text messages s to Plaintiff's cellular telephone number voluntarily.

39. Upon information and good faith belief, Defendant placed its placed its calls and delivered its text messages to Plaintiff's cellular telephone number under its own free will.

40. Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system, and an artificial or prerecorded voice, to placed its calls and delivered its text messages to Plaintiff's cellular telephone number.

41. Plaintiff suffered actual harm as a result Defendant's calls in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

42. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls and deliver text messages, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

43. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system, and an artificial or prerecorded voice, to place advertising or telemarketing calls and deliver advertising or telemarketing text messages, absent prior express written consent, to telephone numbers assigned to a cellular telephone service.

**Class Action Allegations**

44. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

*No-Consent Class*: All persons throughout the United States (1) to whom John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm placed, or caused to be placed, a call, or delivered, or caused to be delivered, a text message (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm customer or a person who submitted the number to John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm, (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification.

*Revocation Class*: All persons and entities throughout the United States (1) to whom John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm, placed, or caused to be placed, one or more calls, or delivered, or caused to be delivered, one or more text messages, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification, (5) after the called party instructed John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm to cease calling or delivering text messages to his or her cellular telephone number.

*Telemarketing Class*: All persons throughout the United States (1) to whom John C. Heath, Attorney At Law, PLLC d/b/a Lexington Law Firm placed, or caused to be placed, an advertisement or telemarketing call, or delivered, or caused to be delivered, an advertisement or telemarketing text message (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification.

45. Excluded from the classes are Defendant, Defendant's employees and agents, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

46. Also excluded from the classes are the members of the classes in the case captioned *Pena v. John C. Heath, Attorney at Law, PLLC d/b/a Lexington Law Firm*, No. 18-24407-CIV-UNGARO (S.D. Fla.), who did not opt out of the settlement.

8

47. Upon information and belief, the members of the classes are so numerous that joinder of all of them is impracticable.

48. The exact number of the members of the classes are unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

49. The classes are ascertainable because they are defined by reference to objective criteria.

50. In addition, the members of the classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendant and by third parties.

51. Plaintiff's claims are typical of the claims of the members of the classes.

52. As it did for all members of the classes, Defendant used an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls and deliver text messages to Plaintiff's cellular telephone number.

53. As it did for all members of the No-Consent Class, Defendant used an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls and deliver text messages to Plaintiff's cellular telephone number without Plaintiff's prior express consent.

54. Like all members of the No-Consent Class, Plaintiff is not, and never was, one of Defendant's customers.

55. As it did for all members of the Revocation Class, Defendant used an automatic telephone dialing system, and an artificial or prerecorded voice, to place calls and deliver text messages to Plaintiff's cellular telephone number after being instructed to cease calling or delivering text messages to his cellular telephone number.

56. As it did for all members of the Telemarketing Class, Defendant used an automatic

telephone dialing system, and an artificial or prerecorded voice, to place advertising or telemarketing calls and deliver advertising or telemarketing text messages to Plaintiff's cellular telephone number without Plaintiff's prior express written consent.

57. Plaintiff's claims, and the claims of the members of the classes, originate from the same conduct, practice, and procedure on the part of Defendant.

58. Plaintiff's claims are based on the same theories as are the claims of the members of the classes.

59. Plaintiff suffered the same injuries as the members of the classes.

60. Plaintiff will fairly and adequately protect the interests of the members of the classes.

61. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the classes.

62. Plaintiff will vigorously pursue the claims of the members of the classes.

63. Plaintiff has retained counsel experienced and competent in class action litigation.

64. Plaintiff's counsel will vigorously pursue this matter.

65. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

66. The questions of law and fact common to the members of the classes predominate over questions that may affect individual members of the class.

67. Issues of law and fact common to all members of the class are:

    a. Defendant's violations of the TCPA;

    b. Defendant's conduct, pattern, and practice as it pertains to dialing cellular telephone numbers absent prior express consent;

  c. Defendant's use of an automatic telephone dialing system as defined by the TCPA;

  d. Defendant's conduct, pattern, and practice of continuing to place calls and deliver text messages to cellular telephone numbers after being instructed to stop doing so;

  e. Defendant's use of an artificial or prerecorded voice, and

  f. The availability of statutory penalties.

68. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

69. If brought and prosecuted individually, the claims of the members of the classes would require proof of the same material and substantive facts.

70. The pursuit of separate actions by individual members of the classes would, as a practical matter, be dispositive of the interests of other members of the classes, and could substantially impair or impede their ability to protect their interests.

71. The pursuit of separate actions by individual members of the classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

72. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the classes.

73. The damages suffered by individual members of the classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

74. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

75. There will be little difficulty in the management of this action as a class action.

76. Defendant has acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate.

### Count I—Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

77. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-76.

78. A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

79. 47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."

80. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

81. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

82. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls and deliver text messages to Plaintiff's cellular telephone number without consent.

83. Defendant separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number without consent.

84. Defendant separately violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an automatic telephone dialing system to place advertisement and telemarketing and send advertisement and telemarketing text messages to Plaintiff's cellular telephone number, and the cellular telephone numbers of proposed class members, without prior express written consent.

85. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff, and the members of the classes, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as a class representative of the classes under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to place calls to Plaintiff's cellular telephone number, and to the cellular telephone numbers of members of the class, by using an automatic telephone dialing system, or an artificial or prerecorded voice;

f) Awarding Plaintiff and the members of the classes damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiff and the members of the classes treble damages under 47 U.S.C. § 227(b)(3);

h) Awarding Plaintiff and the classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: September 11, 2020

*/s/ Curtis R. Hussey*
Curtis R. Hussey
Hussey Law Firm, LLC
82 Plantation Pointe Road # 288
Fairhope, AL 36532
Phone: (251) 401-4882
gulfcoastadr@gmail.com

Aaron D. Radbil (to seek admission *pro hac vice*)
Alexander D. Kruzyk (to seek admission *pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230
Boca Raton, FL 33487
Phone: (512) 803-1578
aradbil@gdrlawfirm.com
akruzyk@gdrlawfirm.com

Counsel for Plaintiff and the proposed classes